All right, the next case we're going to hear is Conrad v. CSX Transportation, and Mr. Katz, whenever you're ready, we'll hear from you. Your Honors, and may it please the Court, my name is Larry Katz, and I represent the employee in this case, William Conrad. This is a lawsuit brought under the Federal Rail Safety Act, and particularly the retaliation provisions of the act. It's extremely important to recognize the policy that underlies the passage of that act by Congress. The railroad industry has a long history of harassing and intimidating and abusing its employees. The FRA has found that CSX in particular would intimidate employees to not report accidents and not report unsafe conditions because those in terms would have to be reported to the FRA, which could result in fines against the railroads and other penalties. And so when Congress passed the retaliation provisions, they did it for the sole purpose that employees would feel free to report injuries, to report unsafe conditions, to report violations of federal rules and regulations so that the rail industry would be safe for the people of America. There are four steps that must be proven in order to establish a violation of the FRSA. This case only involves one of those steps, the issue of knowledge. It's incumbent upon the employee to demonstrate that the company had knowledge that he had engaged in a protected activity. The problem in this case, Your Honor, was that the district court imposed a greater responsibility on the employee. It required that the employee show that the person who actually was involved in the discipline himself had knowledge of the protected activity. And we would respectfully submit, Your Honor, that places an onerous burden on the employee. It places an onerous burden on the employee because in order for the employee to prevail, he must rely on the truthfulness of the very supervisors that Congress passed the FRSA to protect him from. In this case, Your Honors, the evidence is clear that there is a short and direct relationship between the supervisors who are aware of the protected activities and the supervisors who were involved in the discipline. However, the trial court said, no, that's not sufficient. The employee who actually, or the supervisor, I'm sorry, the supervisor who actually disciplined the employee must have knowledge. That simply takes the statute outside of the reality of railroading. Actually, I think it's a little broader. I thought the district court said that the persons involved in either as advisor or upper management had had knowledge. But it might be good for you to address the knowledge issue on this. I'm thinking, for instance, on the first incident, Bayer was involved, but there's nothing to impute that the persons who took the adverse action were told by Bayer or that they knew of the incident at all. Well, that's true, Your Honor, and that goes to the heart of the issue here. In the first accident, we have Mr. Stafford as the person responsible for the discipline. Mr. Stafford reports to Mr. Morris, who reports to Mr. Bayer. It's a very short leap between Mr. Stafford and Mr. Bayer. We would respectfully submit, Your Honor, that when there is a close relationship like that, a jury has the right to infer that there were conversations that occurred. But you had all the discovery and didn't come up with any, and there was direct evidence, explicit direct evidence that said those supervisors didn't have any idea about what Bayer had done. That's true, Your Honor. The jury, though, should have the right to have that supervisor state so in court, under oath, and with the jury analyzing. But that's not the standard on summary judgment. The evidence on summary judgment is a mini-trial, and you can put that evidence to question and have it resolved by a jury, but you've got to put it to the test, and you're given the full opportunity through discovery and depositions to do it, and you were unable to do that. Well, we're unable to do it, but, again, that relies on the truthfulness of the supervisors. And the fact that a supervisor says something which is not supportive of the FRSA case is completely consistent with the congressional history. Given the history of intimidation and harassment, one would expect the supervisors to say exactly what the supervisors said in this case. To dismiss the case of summary judgment stance is contrary to the congressional policy, which is protecting those injured employees. But what would the jury rely on? If this record were presented to a jury, what would a reasonable juror rely on to conclude that your client carried his burden by a preponderance to show knowledge? Judge Davis, the evidence that would apply, and let's talk about the first case first. The second incident perhaps is even closer. But in the first place is the close relationship in terms of the chain of command between these individuals. So you're talking about corporate structure. We are in the first case. You're relying solely on the hierarchical structure of a particular workplace. Now, in the second one. And I'm questioning you to explain, if you can, how a reasonable juror can rule by a preponderance in your client's favor simply on the basis of a corporate structure, even assuming that the law would permit such a thing. Let me go to the second case in responding to that, Your Honor. Well, because there are two different incidents, and either one of those incidents would warrant the reversal of the trial court. Okay, go ahead. In the second case, it's important to remember, and I believe the evidence is a little bit further in the second case. We have Mr. Wright, who is the division manager. The evidence shows that Mr. Wright knows everything that's happening in the division. That's the testimony in the case, and the testimony that had to be accepted as true. We have Trainmaster Renner telling our client that Mr. Wright is not going to be happy with what you did, which is basically supporting his employees not going into a particular yard. So Mr. Wright is the head of that division. We know that he knows everything that goes on there. The jury can infer that Mr. Wright knew about Mr. Conrad's behavior. Unless we want to assume that Trainmaster Renner made an idle threat that Mr. Wright's not going to be happy with what you did, the jury, I think, can reasonably infer that Ms. Renner would report to Manager Wright what occurred in that second incident. You're asking inferences that do an awful lot of work in the way that you're framing this. There's another important point here. OK, go ahead. Two people were involved in the discipline, Mr. Baer and Mr. Diamond. As soon as Mr. Baer began explaining to Mr. Conrad what his violation allegedly was in the second incident, which is throwing a switch improperly, Mr. Diamond called Mr. Wright. Now, admittedly, we don't know what that conversation included. But again, given the broad language and the liberal interpretation of these federal labor protection laws, a reasonable jury could infer Mr. Wright knew what was going on. Mr. Wright was unhappy with what Mr. Conrad did. Mr. Wright suggested that he'd be looked at more closely. And is it unusual that shortly after this incident occurred and Mr. Conrad was accused of something, one of the accusers gets on the phone and calls Mr. Wright? You do a lot of railroad work, right? We do, Your Honor. What I'm hearing from you is the law from the rail. What's that statute? The F.E.L.A.? Yeah, the F.E.L.A. You're trying to import into this statute the 90-year-old standard, the Supreme Court's 80-year-old standard from the F.E.L.A. It sounds like. I don't believe I am, Your Honor, but I do say this. I believe that the standard under the F.E.L.A. that the Supreme Court has ruled on a number of times recognizes the dangers of the workplace and the problems that employees have, which is very similar to the reason that the F.R.S.A. or the Congress passed the retaliation provisions of the F.R.S.A. They understood the mentality of railroad supervisors. The F.R.A.'s investigation disclosed a system within CSX in particular, and we cite to the F.R.A.'s report in our brief, where people were intimidated because the supervisors did not want to report to the F.R.A., and, in fact, supervisors were given bonuses for not reporting to the F.R.A. But the problem is Justice Black hasn't told us that the employee always wins in these cases the way he told us the employee always wins in the F.E.L.A. cases. And the employee should not always win in these cases, Your Honor, but the jury should have a right to decide what's the reality of the situation, what is the reality in terms of the closeness of the supervisors that are involved, the supervisor with knowledge and the supervisor with discipline. Your Honor, if this was, if the person, let me give another example. CSX's corporate headquarters is in Jacksonville. If this was a situation where some supervisor in Jacksonville had learned of a protected activity and somebody up in Cumberland, Maryland, disciplined the plaintiff, I would agree that's extremely remote. But this is a situation where Mr. Wright, Mr. Bair, Mr. Diamond, Mr. Morris, Mr. Stafford, they all work closely together. They talk about what's going on in their division. They're located in the same area. And under those circumstances, and I believe... But if you were right, then, there would never be a knowledge proof requirement simply because the corporate structure imputes knowledge from everybody to everybody else. That's really the point Judge Davis is making is you're relying on a corporate structure, which would then apply in every case to avoid the need to prove knowledge. I believe, Your Honor, that there would be limits to the knowledge. And as I was just explaining, the limits would, based on the realities of the working relationships with the supervisors within, that when the supervisor with knowledge is in a superior position to the supervisor who actually involves in the discipline and they work closely together and they're located in basically the same areas and work in the same territories, in that area, in that situation, I suggest it would be imputed. If it was more remote, it would not be imputed. And so we're not talking about every possible situation within the corporate structure. What evidence beyond circumstantial or otherwise beyond your own client's description of an unfriendly relationship with management would support the contention that the supervisor's declarations were false? Well, certainly I think that with regard to the second situation, Your Honor, the proximity of the Demler-Yard incident to the discipline, we're talking about within a week after the Demler-Yard incident, three senior officials of the United Transportation Union were brought up on charges. That's slightly more than a coincidence, Your Honor. That is something that has not happened in the past, and I believe a jury would be right in assuming that or inferring that this was a direct message from management to the UTU, stay out of our hair, don't interrupt the operation of our train system. And while it is circumstantial, with the proximity in time and the senior level of the union officers involved, that's more than just a coincidence, Your Honor. I believe the jury would be permitted to determine that. Okay. Thank you, Mr. Thank you for your time, Your Honor. Mr. Holmes, Ms. Holmes, excuse me. Good morning, Your Honor. May it please the Court, my name is Jacqueline Holmes, and I'm here on behalf of the Appalachian CSX Transportation. I'd like to jump right to knowledge because I think that is obviously the ground on which the district court ruled in our favor. Our view, of course, as laid out in our papers is that he could well have ruled in our favor on a number of grounds. But let's focus on knowledge first. So there are two alleged adversaries. There were February 2011 charges and an associated timeout, which is outlined in the papers as a paid meeting with management to discuss rules and how to comply with them going forward for which the employee is paid. And then there were August 2011 charges brought pursuant to the collective bargaining agreement that to date have resulted in no consequences whatsoever to Mr. Conrad. Is he still off based on his injury? He is, to my knowledge, Your Honor. I don't know that he has returned. Plaintiff ties the February charges to an Hours of Service Act complaint he says he made in January and the August charges to the Dumbler Yard incident in August. It's undisputed that the only evidence in the record is that Mr. Bair was the only manager who knew about the Hours of Service Act complaint, and it's further undisputed that Mr. Bair was uninvolved in the February 2011 charges. And it is undisputed that the only evidence in the record establishes that a different trainmaster, Danielle Renner, was aware of the Dumbler Yard incident. As Mr. Katz points out, Ms. Renner made some comments that perhaps construed very generously. One might infer that perhaps Mr. Wright had some knowledge of the Dumbler Yard incident, but Mr. Wright had nothing to do with the August 2011 charges either. What plaintiff wants you to do is, of course, to draw further inference that Wright must have made a bunch of phone calls and gotten a bunch of managers to go out and engage in a retaliatory conspiracy. Plaintiff's argument is for really quite an incredibly broad standard. It's a little narrower than I thought, to his credit. It's based on some sort of close connection in the supervisory chain, which, again, is at least a little bit narrower than I thought, but is not a standard that any court has accepted. The Araujo case from the Third Circuit, knowledge was not an issue. It was conceded, as frankly it is in many cases. The Kudyk case from the Eighth Circuit, which is the other principal appellate decision that addresses the burdens of proof under the FRSA, expressly rejected a standard even stricter than that, than the one plaintiff proffers, frankly. Feldman and Welch were the two Sarbanes-Oxley cases from this circuit that plaintiff cites don't address the issue. No court has accepted that standard. It's inconsistent with the statutory text. The text of the FRSA requires a showing of discrimination, meaning that someone was treated differently due to protected activity in which he or she had engaged. You cannot possibly take action due to protected activity unless you know of the protected activity. It's axiomatic and, I think, quite common sense. The plaintiff has made two arguments in his brief. He focused on one of them today. I'll just address them both. The first is the OSHA regulation, and just a technical point on that. He inadvertently, I think, cited 29 CFR Part 1980. He meant, I think, to cite Part 1982, which is the section that addresses the FRSA. That is a, frankly, just parrots a very general standard that there has to be knowledge in the respondent. That regulation does not address with any specificity whatsoever how you deal with that in a company like CSX, which has 31,000 employees and thousands of managers spread over 23 states and D.C. It just simply does not address that. It just says there has to be knowledge in the respondent. OSHA has spoken in more detail to that question, to the extent that's relevant to the Court's analysis. It publishes a whistleblower investigation manual, which is designed to inform the public as to how OSHA will investigate claims under the FRSA, as well as the other statutes that OSHA administers. And it is also to guide OSHA's compliance officers in addressing those complaints. At page 310 of that manual, and the manual is publicly available at www.whistleblowers.gov under the regulations tab. At page 310, under employer knowledge, here's the first sentence. I will read you. It does go on from here, but it says, the investigation must show that a person involved in the decision to take adverse action was aware or suspected that the complainant engaged in protected activity. That is, at a minimum, the proper standard. If you don't want to hold it to decision-maker knowledge, at least somebody who was involved must have been aware. The other sub-agency within the Department of Labor to whom one might look for guidance on this question is the Administrative Review Board. As the Court Mayor may not know, the way these cases are handled within the Department of Labor is that the Secretary of Labor has delegated to OSHA the investigatory process. So OSHA investigates claims. They are then, they issue preliminary findings. Either side is permitted to appeal those findings, and they're heard de novo by an administrative law judge. And in turn, the administrative law judge's decision is reviewed by the Administrative Review Board. And the Administrative Review Board is responsible for issuing what the statute refers to as the final order of the Secretary. The Administrative Review Board on this issue, the most lenient explication of the knowledge standard that I'm aware of under the FRSA is the Rudolph v. Amtrak case, which is cited in our brief. It requires knowledge of someone with involvement in the challenged decision. That case, which I frankly think is too loose a standard, but is far stricter than the one plaintiff is advocating here, involved in-house counsel with knowledge of the protected activity, advising the managerial decision makers of what to do with respect to the employee. And the managerial decision makers had no knowledge of protected activity, and that was found to be sufficient. I find that to be too loose a standard in all candor, but nonetheless, it's significantly stronger than what the plaintiff is advocating for here. Plaintiff's second argument, and it seems the principal one, is a policy argument, that any standard requiring knowledge of someone involved in the decision is just too hard for a plaintiff to meet. That's not true, frankly. You've lost a few cases to prove that's not true. That presumes that the only way for an employee to establish knowledge is through a manager's direct testimony. That's obviously one way. That's not the only way. That's not how knowledge was established. Mr. Baer's knowledge was established through the plaintiff's testimony. The plaintiff said, I told Mr. Baer, for summary judgment purposes, that's the fact. Mr. Baer, by the way, doesn't agree with that, and for summary judgment purposes, that doesn't matter. Similarly, there may be email communications between managers about protected conduct. In the case of a safety concern that's raised, it could be raised in a meeting where a manager was present. The manager may deny that he knew about it, but frankly, that's evidence on which a jury could make an inference. It could be documented in a report that is sent to the manager. It could be something the manager is asked to take charge of fixing. OSHA has, in its manual, provided some other examples, and this would be true probably not in a company the size of CSX, but if you have a piece of equipment and there's an issue raised about the safety of that piece of equipment and there's only one employee who operates the equipment, for example. There are legion ways, and I will tell you, having handled dozens and dozens, probably more of these cases than is healthy, knowledge is not disputed a great deal of the time. Could there be a case where a plaintiff was such a burr under the corporate saddle that everybody just knew all the time everything he did? I mean, maybe, but I'll tell you what happens in those cases because I've had some of those cases, and Mr. Conrad kind of claims to be that guy, right, that he was complaining all the time. So here's the problem with that. If you're somebody who is routinely raising issues, which, by the way, our rules require employees to do and it's important to us that they raise issues, if you're somebody who's always raising issues and then for years and then you get disciplined and there's no change in the character of the issue, I think that undercuts an inference of retaliation, quite frankly, because if you've been raising issues for years with no consequence or if there are other employees, like in this case you have Mr. Maine who was, and Mr. Conrad, for it's big on safety, who are raising issues constantly and aren't being disciplined, that I think undercuts a finding of retaliation quite candidly. And I think that's true here. I certainly think it's true with respect to Mr. Conrad. But then you've got a jury argument rather than an appellate argument, right? Perhaps. Perhaps that's so. But, again, what you can't do is say A knew, A reports to B, therefore B must have known. That doesn't get you there. It just doesn't. That's inference on top of inference. And as the Court's well aware, there's legions of cases that suggest that that's not sufficient to establish knowledge. I will touch just very briefly on some of the other elements of the claim. I don't want to spend a lot of time on this. It's outlined in the briefs. And, obviously, we feel that the judgment could be affirmed on these bases as well. Protected activity, the key on summary judgment purposes for protected activity is objective reasonableness. Taking for summary judgment purposes certainly as true that Mr. Conrad subjectively believed there was a violation of the federal regulations. Under the facts, as outlined, I'll take the hours of service complaint as an example. An employee reports an injury, then marks off. The manager says, will you come and show us what happened as a way of investigating so that they can assess if there's any safety issue. He says no. Nothing happens to him. There's no argument that that employee was required or allowed to go on duty after working for 12 hours. There's no objective basis to think that. And, moreover, somebody in Mr. Conrad's position who told me in his deposition, and this is in the joint appendix at 119, that he had no idea how long the employee had worked. There's no way you can think that that's a violation of hours of service, which allows people to work up to 12 hours. Contributing factor, I'm just going to speak very briefly about. There has to be proof the protected conduct was at least one reason for the adverse action. We acknowledge there can be more than one reason, and some of the reasons can be legitimate. And if the protected conduct played any role, then we lose. But temporal proximity alone is not enough. I would refer the court to the Araujo case, which went out of its way to talk about how low a standard contributing factor is. But even there, the court found that temporal proximity plus disparate treatment, in the sense that the rule had never been enforced before against any employee, and nobody thought to enforce it until after the employee engaged in protected conduct, was enough to survive summary judgment. And the court, even in that situation, found it wasn't overwhelming. Again, what you can't have is just a mere denial of wrongdoing and mere temporal proximity. That does not get you there. And there's ample evidence in this case. There's no shifting explanations. Mr. Conrad originally admitted that he engaged in the conduct in February. And again, there's been no finding whatsoever whether he engaged in misconduct in August or not. That just hasn't happened yet. Treatment of similarly situated individuals. There is evidence in this record that CSX consistently treated individuals who violated this very same rule in precisely the same way it treated Mr. Conrad. And again, there's the evidence that others who engaged in protected activity were not disciplined. I will sum up very briefly on clear and convincing evidence, which is our affirmative burden. It's not contested. Neither below nor in this court did Mr. Conrad put forth any argument whatsoever that we did not satisfy our burden on clear and convincing evidence. So that's, of course, another basis on which the court could affirm. And for all of those reasons, we would just urge the court to affirm the judgment below. Thank you. Mr. Katz. Your Honor, very briefly, as to the other three aspects of the Rule 21 standard, they're referred to in the brief and I won't go into them in any depth at this point. But I again point out to the court a very interesting situation, that we have Mr. Conrad who had been a thorn in the company's side for quite a while. Isn't it unusual that twice within an approximate eight-month period he becomes disciplined? It's highly unlikely that he became a sloppy employee out of the blue. In terms of the second situation, the evidence is that he knew that the supervisors were out there and that they were looking for him. There's nothing to indicate that he became an extremely stupid employee at the last moment. The only logical explanation here and an explanation that a jury should be entitled to reach and hear the evidence concerning is that at a certain point, enough was enough and the supervisors decided to get this thorn out of their side. And especially, Your Honors, after that last incident. It's important to understand what that last incident did. The train that got stuck because they made it go out without sufficient fuel was blocking the main line of the railroad. As long as it was sitting there, the activities within the Baltimore Division essentially were coming to a stop because nobody could get past it in one direction or another. The dispatcher requested that the engineer go into a nearby yard, pull out another train and get his train out of the way. And the engineer said, no, I'm not qualified to go in there. I'm not going to do it. The dispatcher then spoke with Mr. Conrad and repeated the same thing. Essentially, what are you trying to do, stop the entire railroad? And he said, no, I'm just trying to protect my people and federal regulations and the PUC agreements all indicate that somebody has to be qualified to go in there. And that's when she threatened that Mr. Wright's not going to like that. And then within a few days, not only was Mr. Conrad disciplined for the second time in just several months, but two other senior members of the UTU were also disciplined. That information, that evidence, although circumstantial, is more than enough to comply with the policy provisions of this act, which is to protect employees from intimidation and harassment. And it's more than just a little bit unusual that shortly after Mr. Conrad is told that in your union capacity you shut down the railroad, that there is a score-skirt policy against the members of the union. We would respectfully request that the court particularly look at that second incident. Remember, if your honors rule on just one of those, we return to the district court and go forward to the jury. And while I will admit that the evidence with regard to the first incident may be lighter and a little bit more distant, with the second incident, the inferences and the circumstantial evidence is just completely overwhelming. And I ask you to refocus on the facts of that aspect. And I thank you for your time, your honors. Thank you, Mr. Katz. We'll come down to Greek Council and proceed on to the next case.
judges: Paul V. Niemeyer, Henry F. Floyd, Andre M. Davis